Lonnie C. MOEHR, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 00–35.

Supreme Court of Wyoming.

Nov. 30, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

Appellant, Lonnie C. Moehr (Moehr), challenges the district court's order revoking his probation. Moehr asserts that the requirements of his probation were neither reasonable nor enforceable under the circumstances of this case. Moehr also claims that the Department of Corrections (DOC) did not adhere to required procedures in assigning him to intensive supervision. We find no error in the district court's decision to revoke Moehr's probation, and so we affirm.

## ISSUES

Moehr posits these issues:

I. Were probation requirements reasonable and enforceable under these circumstances?

II. Were all procedural requirements met by the Department of Corrections in placing appellant on the intensive supervision program and then seeking judicial revocation of it?

The State summarizes those issues thus: "Did the district court properly revoke appellant's probation?"

## FACTS

On June 10, 1998, upon a plea of nolo contendere, Moehr was found guilty of a violation of Wyo.Stat.Ann. § 14–3–105(a) (Michie 1997), immoral or indecent acts with a minor. Moehr was sentenced to serve not

less than one year nor more than three years in a State correctional facility. That sentence was suspended, and Moehr was placed on supervised probation for a period of two years. The conditions of his probation were these:

1. The Defendant shall lead a law-abiding life, and shall not violate any federal, state or local law, nor the term of any valid court order;

2. The Defendant shall abide by all rules, regulations and requirements imposed upon him by the Department of Corrections, Probation and Parole.

3. The Defendant shall attend counseling as deemed appropriate by his counselor and/or probation agent.

On November 20, 1998, the State filed a petition to revoke Moehr's probation. The basis for that petition was Moehr's refusal to submit to intensive supervision as directed by his probation officer. The district court issued an order to show cause why Moehr's probation should not be revoked, but that order was quashed when Moehr agreed to comply with the terms of his probation.[1] The principal "condition" of Moehr's probation that became the sticking point in these proceedings was that his level of supervision was to be "intensive." The intensive supervision program is provided for by statute. The statute gives DOC the authority to establish the program and to adopt reasonable rules and regulations to govern it. Wyo.Stat.Ann. § 7–13–1102 (LEXIS 1999). The statute makes plain that participation in the program is a matter of grace and not of right. Wyo. Stat.Ann. § 7–13–1103 (LEXIS 1999). Placement in the program is also governed by statute. A district court may, as a condition of probation, order that a defendant who has entered a plea of guilty or nolo contendere to, or has been convicted of, a felony participate in the intensive supervision program. Wyo.Stat.Ann. § 7–13–1105 (LEXIS 1999). In addition, DOC may place an individual in the program as an alternative to revocation of probation. Wyo.Stat.Ann. § 7–13–1106 (LEXIS 1999). The latter method is

how Moehr came to be in the intensive supervision program. Moehr entered into an agreement to participate in that program. One of the requirements of acceptance into the intensive supervision program is that the probationer *agrees* to participate in the program. § 7–13–1106(a)(iii).

Moehr plainly did not like intensive supervision. As a result, the State filed a request for the district court to review and clarify the terms of Moehr's probation. At the hearing which followed, the district court heard considerable testimony, and that testimony can be summed up as follows: Moehr was often hostile and threatening to DOC personnel, as well as local law enforcement officers, and he simply was not doing the things that were expected of him. The district court made it abundantly clear that Moehr's status as a probationer was a matter of grace and that the alternative to his fulfilling the terms of his probation was incarceration. At the conclusion of that hearing, Moehr appeared to have understood, and he appeared apologetic:

"That is pretty clear, thank you. You know, I would like to say that I did, you know—I think the last meeting we had or so-explain to Penny that I realized that some of my anxieties and frustrations aren't her fault and aren't directed at her, personally. I do think that, you know, I can get some good out of ISP."

The result of that hearing was that Moehr's probation was continued because he had indicated that he did intend to cooperate.

On October 21, 1999, a second petition to revoke Moehr's probation was filed. The basis for the petition was that Moehr had refused to participate in a sex offender group, as deemed appropriate by his counselor and probation agent, and that he had not maintained full-time employment. Moehr claimed he was disabled and could not work but would not sign a release so that DOC could verify the nature of his disability. A hearing was held on December 3, 1999, and on December 9, 1999, the district court issued its order revoking Moehr's probation. The evidence adduced at that hearing estab-

---

**1.** Before the exact terms of Moehr's probation were established, he entered a plea of nolo contendere to the crime of misdemeanor interfer-

ence with a peace officer. In lieu of revocation of probation, Moehr agreed to the placement in intensive supervised probation.

lished that Moehr had refused to participate in the sex offender program (largely because he would be required to submit to polygraph testing and admit his guilt), and that he had refused to provide medical releases to validate his claim that he could not work because of his disability.

## DISCUSSION

█ Moehr contends that: Because he suffered from bipolar disorder and other emotional problems, because of the "attitude" adopted by some probation personnel, and because probation personnel have too great a level of discretion in setting probation conditions, he was doomed to failure from the outset. The record demonstrates quite the opposite. The terms of Moehr's probation were clear and, in significant part, the exact provisos of probation are those selected by the employees of DOC who supervise probationers. *See* Wyo.Stat.Ann. § 7–13–407 (LEXIS 1999). The agreement Moehr reached with his probation officer is, indeed, grave. We attach it to this opinion as Appendix "A" so that the terms we approve of by this opinion are clear. It is congruent in all respects with the purpose of Wyoming's penal law—reformation and prevention. *See* Wyo. Const. art. 1, § 15.

Much to do is made of Moehr's inability to manage his anger and to succumb to impulse, especially if under the influence of intoxicants. The crime for which he was placed on probation was just such an act. He was accorded the status of probation as a matter of grace—the usual punishment is incarceration. The very purpose of the probationary sentence imposed on Moehr was to reform his penchants for acting out aggressively (to the point of illegality) and impulsively (sticking his hand down a young girl's pants so that his fingers came in contact with her vaginal area).

█ A district court's decision to revoke probation is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion; the district court is required to make a conscientious judgment that the alleged violation occurred after considering the reasons underlying the conditions of probation, the violation of those conditions, and the reasons leading to the violation. *Johnson v. State*, 6 P.3d 1261, 1263 (Wyo.2000) (citing *Roberts v. State*, 912 P.2d 1110, 1112 (Wyo.1996); and *Leyba v. State*, 882 P.2d 863, 865–66 (Wyo.1994)). This case is very much like both *Johnson* and *Leyba*, except that, here, at the behest of the State, Moehr was brought before the district court so that his obligations vis-à-vis his probation could be further explained to him. That record is abundant in providing Moehr with the information he needed, and he acknowledged that he understood the instruction provided by the district court. The record of the proceedings at his revocation hearing likewise demonstrates that Moehr refused to conform to the terms of his probation and his decisions were made unilaterally. Under these circumstances, the district court did not abuse its discretion in revoking Moehr's probation.

█ Moehr also contends the district court abused its discretion by delegating the delineation of the terms of Moehr's probation to DOC. That is exactly what is contemplated by the governing statutes which we have set out above. We find no abuse of discretion in this regard.

The order of the district court revoking Moehr's probation is affirmed.

## APPENDIX "A"

**OSP–2       INTENSIVE SUPERVISION PROGRAM AGREEMENT**

Name: Moehr, Lonnie                                    No.   55760

Address: 1002 14th St. Wheatland Wyo.                  Date:  December 16, 1998

322–5581

In consideration of having been granted probation/~~parole~~ by *Eighth Judicial Dist. Court.* I hereby agree to abide by the following rules and regulations of the Intensive Supervision Program (ISP), in addition to complying with any other court ordered or parole conditions.

1. I will obey all Municipal, State and Federal Laws and will report all arrests to my ISP Agent(s).

2. I will comply with all instructions in matters affecting my supervision, and cooperate by promptly and truthfully answering inquiries directed to me by an ISP Agent(s).

3. I will not own, purchase, possess, transport, or use weapons or explosives prohibited by my ISP Agent(s), or forbidden by law.

4. I will not own, possess or purchase any animal deemed vicious by ISP Agent(s).

5. I will not leave this county without written permission of my Probation/Parole Agent(s) and agree to comply with residence restrictions, weekly schedules, and curfews as directed.

6. I will submit to any and all evaluations deemed necessary by ISP Agent(s), at my own expense, and adhere to any and all recommendations resulting from those evaluations.

7. I will actively participate in any treatment/counseling and/or training programs recommended by ISP Agent(s), at my own expense.

8. I will remain employed full-time (35–40 hours per week) throughout my participation on ISP and will notify ISP Agent(s) regarding any change(s) in my employment status (i.e.wages, hours, promotions, demotions, firings).

9. I will pay monthly supervision fees of $25 to participate in ISP (subject to reduction(s) and reinstatement(s) of the original $25).

10. I will not quit my job without prior approval of my ISP Agent(s), and should I lose my job I will obtain employment within a reasonable amount of time.

11. I will remain alcohol and drug free and, unless given permission to do so by my ISP Agent(s), will not enter any place where alcohol is sold.

12. I will submit to reasonable search and seizure at any time, with or without a search warrant of my person (including the extraction of blood, breath, or urine for alcohol/drug screening), property, place of residence, vehicle and personal effects.

13. I will travel only by an approved method, proceeding directly to my destination and returning promptly to my residence without unauthorized stops or detours.

14. I will not change my residence without prior approval and will keep my ISP Agent(s) informed of my whereabouts and activities at all times.

15. I will not have in my residence at any time a person who has not been approved by my ISP Agent(s).

16. I will not enter into any contract, make any purchases of *$50* or more, incur any debt, open/hold a checking account, or have a credit/ATM card, without the prior approval of my ISP Agent(s).

17. I know that intermediate sanctions for program violations may be implemented as part of intensive supervision, and that such may include but are not limited to community service, electronic monitoring, and county jail time. I will submit to such intermediate sanctions as may be administratively imposed on me.

18. I understand if I am placed on electronic monitoring, I will be required to maintain in my home an operable telephone compatible with the monitoring equipment and electrical service. I understand a transmitter will be attached to my body and a monitor will be attached to my telephone line. I will report any equipment problems to my ISP Agent(s) immediately and I will be held financially responsible for any damage to the equipment, other than normal wear. I will not tamper with, attempt to fix nor allow anyone else to tamper

with or attempt to fix the equipment; nor will I take any action which will interfere with the operation of the equipment. All equipment will be returned to the Department of Corrections upon request.

19. In the event of an emergency I will make a reasonable effort to obtain permission from an ISP Agent to leave my residence. I understand, if that is not possible, I must contact an ISP Agent when the situation is under control and then provide the ISP Agent(s) with documentation verifying the emergency.

20. Special Condition(s): *Condition # 12 also applies to law enforcement personnel, if instructed by probation/parole agent (agents).*

I further waive all rights and process pertaining to extradition, and consent to return to the State of Wyoming from any and all jurisdictions, in or outside the United States, wherever I may be found. I have read or have had read to me this entire document and I understand the conditions, and voluntarily agree to abide by the rules and regulations of the Wyoming Department of Corrections Intensive Supervision Program.

| /s/Lonnie C. Moehr | 12/16/98 |
| --- | --- |
| Intensive Supervision Program Participant | Date |
| /s/Penny Martinez | December 16, 1998 |
| Intensive Supervision Program Agent | Date |