2002 WY 46

**Elly ANDERSON, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00–289.

Supreme Court of Wyoming.

March 28, 2002.

Kenneth M. Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling and Kimberly A. Baker, Senior Assistant Attorneys General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, Elly Anderson (Anderson), challenges an order of the district court revoking probation granted to her under Wyo. Stat. Ann. § 7–13–301 (Lexis-Nexis 2001).[1] Anderson contends that the

---

1. § 7–13–301. Placing person found guilty, but not convicted, on probation.

(a) If a person who has not previously been convicted of any felony is charged with or is found guilty of or pleads guilty or no contest to any misdemeanor except any second or subsequent violation of W.S. 31–5–233 or any similar provision of law, or any second or subsequent violation of W.S. 6–2–501(a) or (b) by a household member as defined by W.S. 35–21–102 against any other household member or any similar provision of law, or any felony except murder, sexual assault in the first or second degree, aggravated assault and battery or arson in the first or second degree, the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court. The terms of probation shall include that he:

(i) Report to the court not less than twice in each year at times and places fixed in the order;

(ii) Conduct himself in a law-abiding manner;

(iii) Not leave the state without the consent of the court;

(iv) Conform his conduct to any other terms of probation the court finds proper; and

(v) Pay restitution to each victim in accordance with W.S. 7–9–101 and 7–9–103 through 7–9–112.

(b) If the court finds the person has fulfilled the terms of probation and that his rehabilitation has been attained to the satisfaction of the court, the court may at the end of five (5) years, or at any time after the expiration of one (1) year from the date of the original probation, discharge the person and dismiss the proceedings against him.

(c) If the defendant violates a term or condition of probation at any time before final discharge, the court may:

(i) Enter an adjudication of guilt and conviction and proceed to impose sentence upon the defendant if he previously pled guilty to or was found guilty of the original charge for which probation was granted under this section; or

district court did not have a sufficient factual basis for revoking her probation, and that it failed to establish a factual basis for her guilty plea before accepting that plea. We will reverse and remand for further proceedings consistent with this opinion.

[¶ 2] Anderson states these issues:

1. Whether Ms. Anderson received a fair probation revocation hearing when her right to due process was violated?

2. Whether the district court erred when it entered a judgment against Ms. Anderson when there was an improper factual basis presented for the plea?

The State styles the issues thus:

I. Whether the district court erred in revoking Appellant's probation?

II. Whether a factual basis was established before Appellant's guilty plea was accepted?

## FACTS

[¶ 3] Anderson entered a plea of guilty to a charge that, during the early morning hours of October 3, 1996, she committed the crime of aggravated assault and battery upon the person of James Hall (Hall). That crime is defined by statute:

§ 6-2-502. **Aggravated assault and battery; penalty.**

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) **Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or**

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

Wyo. Stat. Ann. § 6-2-502 (LexisNexis 2001) (emphasis added).

[¶ 4] Anderson was charged in two counts, count one being the charge of aggravated assault and battery and count two being a charge of simple assault. The simple assault statute provides:

§ 6-2-501. **Simple assault; battery; penalties.**

(a) A person is guilty of simple assault if, having the present ability to do so, he unlawfully attempts to cause bodily injury to another.

(b) A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another.

(c) Except as provided by subsection (e) of this section, simple assault is a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00).

(d) Except as provided by subsection (f) of this section, battery is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both. Notwithstanding any other provision of law, the term of probation imposed by a judge under this subsection may exceed the maximum term of imprisonment established for the offense under this subsection provided the term of probation, together with any extension thereof, shall in no case exceed one (1) year.

(e) A household member as defined by W.S. 35-21-102 who is convicted upon a plea of guilty or no contest or found guilty of simple assault against any other house-

(ii) Order that the trial of the original charge proceed if the defendant has not previously pled or been found guilty.
(d) Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for any purpose.

(e) There shall be only one (1) discharge and dismissal under this section or under any similar section of the probationary statutes of any other jurisdiction.

hold member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member, is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.

(f) A household member as defined by W.S. 35–21–102 who commits a second or subsequent battery against any other household member shall be punished as follows:

(i) A person convicted upon a plea of guilty or no contest or found guilty of a second offense under this subsection against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member within the previous five (5) years is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both;

(ii) A person convicted upon a plea of guilty or no contest or found guilty of a third or subsequent offense under this subsection against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member within the previous ten (10) years is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both.

Wyo. Stat. Ann. § 6–2–501 (LexisNexis 2001).

2. *See* W.R.Cr.P. 11(b).

[¶ 5] Hall and Anderson lived together and had a child who was about 21 months old. During an episode of domestic violence, Anderson held a kitchen knife up in front of herself and threatened to use it on Hall. Anderson entered a plea of not guilty on November 21, 1996. On February 24, 1997, Anderson appeared in district court to change her plea in connection with a plea agreement. The agreement was that Anderson would consent to plead guilty to aggravated assault, and in exchange the State would dismiss the simple assault charge and recommend that she be sentenced under Wyo. Stat. Ann. § 7–13–301, so long as the presentence report established that she had no prior felonies, assaults or batteries. During the course of the plea proceeding,[2] the district court asked Anderson if she suffered from a mental illness, and she answered, "No." Anderson was asked to provide a factual basis for her plea, and the transcript reflects this:

THE DEFENDANT: Your Honor, at the time that I had the weapon in my hand, it was not drawn toward the victim. It was used to get access to try and vacate the premises because I was being detained.

THE COURT: What was the weapon you had?

THE DEFENDANT: It was a kitchen knife.

THE COURT: For the purpose of this proceedings [*sic*], I understand the circumstance that you have explained here, but you threatened another individual with it?

THE DEFENDANT: To gain access to my daughter, yes, I did.

THE COURT: Who was that other individual?

THE DEFENDANT: The father of my child.

THE COURT: Did that occur in Natrona County, Wyoming?

THE DEFENDANT: Yes, it did.

[¶ 6] The district court then made findings, including a finding that there was a factual basis for the plea. Anderson was directed to make herself available to the

Probation and Parole Division of the Wyoming Department of Corrections so that a presentence report could be made. The presentence report was filed with the district court on May 14, 1997, and in addition to much other information, it contained this "Evaluation:"

Before the court for her first known felony offense is a 42 year old divorced mother of one. This writer has some concerns regarding the defendant's reported history primarily due to two factors. First, in each meeting with this writer the defendant reported being sexually abused by a male authority figure. The defendant seems to partially blame herself for these instances of abuse because she claims her "bust is a magnet for men." The defendant told this writer "Mr. Hanley, I have been stacked since I was 14 years old. Now I not [sic] talking A or B here, I am talking double D's". These types of comments went on throughout this investigation. These comments, coupled with so many unverifiable reports of sexual abuse in the defendant's past, led this writer to believe that the defendant would benefit from psychiatric help at the state mental hospital either for extensive sexual abuse or pathological lying. Throughout the course of this investigation the defendant gave this writer what appears to be a lot of inaccurate information about every aspect of her past, yet gave that information in such a manner that this writer believes the defendant is either an exceptionally good liar, or she actually believes the things she reported.

[¶ 7] At the sentencing proceeding[3] Anderson's attorney made an objection to the "tenor" of the report and stated to the district court that if the probation agent had followed up on Anderson's reports, then much of the information could have been verified. The district court noted the objection but then asked what the sentencing recommendation was. The discussion that followed focused in significant part on Anderson's "instability," the fact that she was currently under the care of a psychiatrist and taking medications, and that Anderson had not been truthful with the probation agent during the presentence investigation process. All in all, based upon the probation agent's perception of Anderson, which perception now had been methodically communicated to the district court, this was not an altogether promising beginning to a lengthy period of probation. Nonetheless, by order entered on June 18, 1997, the district court decided to place Anderson on probation for a period of one to five years, with these terms specified:

1. That the Defendant be under the direct supervision of the Wyoming Department of Corrections, Probation and Parole and shall obey that department's rules and regulations.

2. That the Defendant shall lead a worthy, law-abiding life.

3. That the Defendant shall not violate any local, state or federal law.

4. That the Defendant shall perform community service as directed by the Department of Corrections, Probation and Parole.

5. That the Defendant shall refrain from the use of alcohol and controlled substances, and not be present where alcohol is sold.

6. That the Defendant shall submit to random drug and alcohol testing as directed by the Department of Corrections, Probation and Parole.

7. That the Defendant shall successfully complete counseling as directed by the Department of Corrections, Probation and Parole.

8. That the Defendant shall submit to a psychological evaluation and follow up with any recommendation for counseling as directed by the Department of Corrections, Probation and Parole.

---

3. We take note here that the victim did not "press" these charges. Rather, they were brought by the investigating officers. Hall also declined to give a victim's statement to Probation and Parole for the presentence report. At sentencing, Hall appeared with Anderson to announce that they were engaged and that he did not want a "no contact" provision against her in the conditions of her bail or in her probation conditions.

9. That the Defendant shall remain gainfully employed as prescribed by a doctor.[4]

10. That the Defendant shall pay Fifty Three Dollars ($53) in detention costs as directed by the Department of Corrections, Probation and Parole.

11. That the Defendant shall pay Sixty Dollars ($60) to the Public Defender Fund as directed by the Department of Corrections, Probation and Parole.

[¶ 8] On March 30, 2000, a Petition for Revocation of Probation and Bench Warrant was filed in the district court by the prosecuting attorney. An affidavit from one of Anderson's supervising probation agents,[5] Barbara Bequette (Bequette), was attached to that petition to this effect:

1. That she is the duly appointed, qualified and acting, Probation and Parole Agent, Department of Corrections, Division of Probation and Parole, State of Wyoming.

2. That said Defendant, ELLY ANDERSON, by Order of Court made and entered herein on June 2, 1997, was placed on probation for a period of one (1) to five (5) years following her plea of guilty to the crime of Aggravated Assault and Battery; HONORABLE W. THOMAS SULLINS, Judge presiding.[6]

3. That your affiant is the Defendant's supervising probation agent.

4. That said Defendant has not reported to this office since February 14, 2000. This agent sent a letter to her last report-ed address instructing her to contact this agent within five (5) days or face a possible bench warrant. Said Defendant has failed to do this and is therefore believed to have absconded, in violation of conditions one (1) and two (2) of her Judgement [sic] and Sentence [Order].

5. That said Defendant has not remained gainfully employed and thus has failed to remain current on her child support, in violation of conditions one (1), two (2) and nine (9) of her Judgement and Sentence.

6. That said Defendant informed this agent she had completed counseling at the Self Help Center as directed, when in fact, she had not. Upon speaking with Defendant's counselor, Thad Davidson, it was further learned that said Defendant is no longer welcome in group as she does not work on her issues as directed. This being the second time said Defendant has been terminated from counseling. This is in violation of conditions one (1), two (2), and three (3) of her Judgement and Sentence.

7. That said Defendant was court ordered to obtain a psychological evaluation, but knowingly obtained a psychiatric evaluation instead, in violation of condition eight (8) of her Judgement and Sentence.

[¶ 9] Anderson was arrested on May 10, 2000, and initially appeared before the district court on May 11, 2000. Anderson asserted at that time that she had not re-

---

4. Anderson suffered from a back injury, and her ability to work was somewhat limited.

5. § 7–13–407. Duties of probation and parole agents.

(a) Under direction and supervision of the director, probation and parole agents shall:
(i) Except as otherwise directed by the director, devote full time to the performance of their duties in carrying out the provisions of W.S. 7–13–401 through 7–13–421;
(ii) Investigate all cases referred by any court, the department or the board, and report to the court, department or board in writing;
(iii) Furnish to each person released on probation, parole or conditional release under his supervision a written statement of the conditions of the probation, parole or conditional release and instruct him regarding the conditions;
(iv) Supervise the conduct of each person on probation, parole or conditional release through personal visits, reports and other appropriate means, and report in writing as often as required by the court, department or board;
(v) Use all practicable and suitable methods, not inconsistent with the conditions imposed by the court, department or board, to aid and encourage persons on probation, parole or conditional release to bring about improvement in their conditions and conduct;
(vi) Perform other duties as directed by the director.

6. Although Judge Sullins presided at the time Anderson was placed on probation, Judge Park presided over the revocation proceedings.

ceived [7] a copy of the petition to revoke her probation, and so one was provided to her. The purpose of that proceeding was largely to inform Anderson of the allegations in the petition to revoke her probation, to inform her of her rights, to appoint counsel, and arrange bond. This exchange occurred during those proceedings:

MR. BLONIGEN: Your Honor, our biggest concern on bond is the nature of the allegations, failure to remain within the supervision and actively deceiving her probation officer. In addition, our office received a fax from the probation officer yesterday with additional information of an incident on December 20th, 1999, where the Defendant was found in possession of a large knife which agents found after receiving a complaint that she had been waving that knife around. That's of concern given the underlying nature of the charge, Your Honor, an aggravated assault with a knife.

Given all the concerns we have, here, Your Honor, we will recommend $5,000 cash or surety bond.

[¶ 10] Anderson had not received a written notice of this alleged December 20, 1999 incident, and at no time during the entire proceedings was any evidence admitted to substantiate it, whether by hearsay or otherwise. In addition, this same information was repeated to the district court at the dispositional phase of the probation revocation proceedings.

[¶ 11] Anderson next appeared before the district court on Friday, May 26, 2000. The public defender related to the district court that Anderson's case was somewhat more complicated than most such cases, that he was not prepared, and that he needed a continuance. As noted above, the public defender was appointed on May 11, 2000, and an appearance was entered by a public defender on May 15, 2000. The district court

reluctantly granted a continuance until Wednesday, May 31, 2000, following the Memorial Day weekend. The public defender's attempts to further object to the length of the continuance were interrupted by the district court, and the final such attempt was apparently discussed off the record.

[¶ 12] At the May 31, 2000 hearing, the State first called Karen Bachert, a probation agent who had supervised Anderson from October 20, 1998, until January of 2000. Anderson's attorney objected to most of Bachert's testimony, but all objections were overruled. Bachert testified that she instructed Anderson on four occasions to attend the Women Offenders Group, but that Anderson did not do so, that Anderson was instructed to obtain a psychological evaluation and did not do so, and that Anderson was instructed to obtain employment and failed to do so. Bachert also characterized Anderson as being "rarely honest" with her and said that Anderson had an "obsession with her daughter, but this obsession is practically detrimental to her and her daughter. And she was constantly involving the police with allegations of molestation."

[¶ 13] However, Bachert admitted that she never checked the child support records regarding Anderson while she was supervising her and wrapped up her direct testimony with a conclusory statement that probation was not of benefit to Anderson. During cross-examination, Bachert conceded that she did not really know the difference between a psychological evaluation and a psychiatric evaluation,[8] and that she had received a psychiatric evaluation from Anderson. Bachert identified a copy of the psychiatric evaluation, and testimony was given about it, but the district court would not admit it in evidence for lack of foundation, although Probation and Parole had it in its records. Bachert went on to say that she was not aware that Anderson had reported to the Depart-

---

7. One of the apparent problems was that either Anderson had failed to keep her probation agent informed of her address, or the Probation and Parole Division had failed to note changes of address submitted telephonically by Anderson. However, it was clearly Anderson's obligation to ensure that her probation agent knew how to reach her.

8. During the sentencing, the entire discussion with respect to treatment focused on psychiatric treatment. However, the probation order did say Anderson should get a psychological evaluation.

ment of Vocational Rehabilitation as directed by Bachert, nor was she aware that Anderson was employed at the time of the hearing. Bachert also conceded that Anderson had maintained "pretty good" contact with her. Bachert's testimony also established that she was not Anderson's original probation agent, and that Anderson had had a number of different agents supervising her.

[¶ 14] Barbara Bequette also testified at the May 31, 2000 hearing. She related that she had been supervising Anderson for about a month and a half. Bequette's supervision appears to have consisted of two events. The first occurred on January 25, 2000:

A. I met with her on the 25th of January and talked with her about how I supervised. Told her she needed to get a psychological evaluation. She said it was completed. Asked her to get that for me.

On the 4th of February, she came in and started with the allegations again of the molestation of her child. And at that time, I asked her to get all of the information together, told her that we would go down to the police station together and give the information to Detective Jones; and if she was lying, that she could face possible charges for false allegations.

She also told me at that time that she had completed the Women Offenders Group.

On the 14th was her last contact with me, the 14th of February. She called me and asked me to give her until Monday to get all of the information together so we could go down to the police station. And I gave her that. And she never reported again.

Q. Was it made clear to her that her reports had to be to Probation and Parole in person?

A. Yes.

Q. And how frequently?

A. Once a month, between the 1st and the 10th, she had to have an appointment with me.

[¶ 15] Bequette testified that Anderson's last in-person contact with her was on February 11, 2000. Bequette also attempted to testify to an oral, hearsay report from the counselor who ran the Women Offenders Group, and the district court sustained an objection to that testimony. The prosecutor then chose a different tack, which was to ask if Anderson was required to provide proof that she had completed the counseling. Bequette responded that Anderson was to provide such proof, and that Anderson had never done so. On cross-examination, Bequette conceded that when she talked with Anderson on February 14, 2000, she told Anderson that if Anderson completed the counseling and the psychological evaluation, then they "could look at a discharge." Bequette, too, was not aware that Anderson had been to DVR and that Anderson was employed at the time of the hearing. Bequette's testimony concluded the State's case.

[¶ 16] Anderson presented evidence establishing that she was a client at DVR, and that she had completed two training programs. Rita Burg testified on behalf of Anderson. Burg met Anderson at Shepherd's Staff Catholic Church, and Anderson lived in Burg's home from January 1, 2000, until early March of 2000. Burg testified that she drove Anderson to the Probation and Parole Office on February 14, 2000, and that when Anderson came out, Anderson was elated because she had been told that she would no longer be on probation. Elene Mary Kirkpatrick also testified on Anderson's behalf. She related that Anderson lived in her home for three weeks in late February and/or March of 2000, and that she overheard Anderson calling her probation agent on one occasion, at which time Anderson left a message including Kirkpatrick's phone number.

[¶ 17] Anderson also testified in her own behalf. Anderson claimed that she was told she no longer needed to report to her parole agent, but that she did call several times and left messages asking for a return call. Her calls were not returned. Anderson also related her recent employment history and her contacts with DVR.

[¶ 18] On cross-examination, the prosecutor asked Anderson if she had ever attended "Fresno State," as she had reported during

her presentence interview. Anderson responded that she had attended Fresno City College seven years before.[9] Although Anderson's attorney objected to this line of questioning, the district court overruled and insisted that she answer.

[¶ 19] Anderson admitted that she had worked only about five months during the time she was on probation. She also testified that her counselor had told her that she could return to counseling at any time.

[¶ 20] The district court heard brief arguments and then issued its ruling. The district court noted that probation was a privilege and that conditions of probation must be strictly satisfied. The district court eliminated the failure to obtain a psychological report, versus a psychiatric report, as grounds for revocation of probation (characterizing it as hair splitting) and noted that employment was not a pressing issue. However, the district court found that Anderson had not maintained contact with her probation agent and had not completed counseling, which it characterized as a "crucial and integral" part of the probation. The district court heard brief arguments from counsel with respect to sentencing and then determined that the sentence would be 12 to 18 months at the Wyoming Women's Center.[10] Orders were entered to that effect on June 7, 2000, and Anderson appealed.

[¶ 21] By letter dated January 15, 2001, the Warden of the Wyoming Women's Center notified the district court that Anderson was to be transferred to the Wyoming State Hospital (WSH). Appended to that letter was an evaluation from a psychologist that contained the following information:

9. Although this brief exchange is in the transcript, the State did not follow up on the answer. However, it is clear in context that this relates back to the presentence report and the accusation that the information she provided was false.

10. Our review of the record reveals that, although Anderson was given an opportunity to allocute at the time she was placed on probation, she was not afforded such an opportunity at the time she was sentenced to a term of 12–18 months in the Wyoming Women's Center. No issue is raised in this regard, but we call this to the attention of the district courts in an effort to ensure that the requirement for allocution is met.

I am writing to document my assessment of Elene Anderson on 12/27/00 in conjunction with a meeting of the Multi Disciplinary Team discussing her issues, current mental status and Team recommendation that she be evaluated for the appropriateness of a transfer to WSH following a deterioration in her mental state over the last several months. Ms. Anderson has additionally been evaluated by Dr. Bruce Kahn and he concurs with the conclusion regarding her need for more intensive treatment as outlined below.

Ms. Anderson arrived at Wyoming Women's Center on June 6, 2000 after revocation of her probation on assault and battery charges. Her sentence is 12–18 months. She began to display acute symptoms of mental disorder in August which have since escalated. Natrona County Jail noted that the inmate displayed "bizarre" behavior during her stay there before being transferred to WWC.

Ms. Anderson experiences chronic difficulties with other inmates due to significant paranoid persecutory and grandiose ideation that is a catalyst for and feeds conflict with others. In addition to her hypervigilant and paranoid stance, Ms. Anderson also exhibits additional symptoms of serious mental disorder that contribute to her difficulty functioning adequately in the corrections setting. These include low frustration tolerance, poor judgment, affective lability, and high emotionality. She has particular difficulty managing her anger appropriately and is verbally aggressive with other inmates. She has voiced an inability to guarantee she will not become physically aggressive with male staff. Ms.

W.R.Cr.P. 32(c)(1)(C); *Christy v. State*, 731 P.2d 1204, 1207 (Wyo.1987); and *see* Michael A. DiSabatino, J.D., Annotation, *Right and Sufficiency of Allocution in Probation Revocation Proceeding*, 70 A.L.R.5th 533 (1999).

It may be that allocution is not an absolute requirement at the time probation is granted, as technically a sentence is not imposed. However, better practice is probably to allow the defendant an opportunity to allocute at that time, as well as at sentencing in such circumstances as those which arise under Wyo. Stat. Ann. § 7–13–301. *See McCarty v. State*, 883 P.2d 367, 371–72 (Wyo. 1994).

Anderson endorses neurovegetatitive symptoms of depression, including dysphoria, tearfulness, difficulty sleeping, anhedonia and difficulty concentrating. She is not currently an acute suicide risk and denies any suicidal ideation, intent or plan. Ms. Anderson evidences transient psychotic symptoms including persecutory ideation, poor reality testing, grandiosity, circumstantiality, and perseverative thinking. Ms. Anderson reports homicidal ideation toward the father of her daughter, whom she states has been sexually molesting their child. Ms. Anderson posits that the assault and battery on her victim was the result of attempting to protect her daughter from further abuse.

Diagnostically, Ms. Anderson demonstrates symptomotology consistent with of [sic] those patients functioning with Borderline range of personality organization, with narcissistic and paranoid trends. Additionally, Ms. Anderson exhibits symptoms of Major Depressive Disorder with transient psychotic symptoms. She meets the diagnostic criteria for Alcohol Dependence and states she has been sober the last six years. Ms. Anderson has a history of difficulty withdrawing from prescription pain medications secondary to extensive back surgery.

Ms. Anderson has received other diagnoses in the past including Bipolar Disorder and Post-traumatic Stress Disorder. She is designated seriously and persistently mentally ill (SPMI) as defined by Division of Behavioral Health criteria. As a result of her lack of control over her behavior and emotions and the risk posed to the safe and smooth running of WWC, Ms. Anderson has been placed on Temporary Restriction Order status.

Although Ms. Anderson has been repeatedly offered psychiatric treatment and psychotherapy, she has derived little benefit from these interventions. She has refused psychiatric medications (Nortriptylene and Zyprexa) and the intensity of her current symptomotology makes her a poor candidate for the types of psychotherapeutic interventions offered in the prison setting. Clearly, Ms. Anderson's serious and persistent mental disorder cannot be adequately treated with the resources currently available at WWC. Attempting to continue to manage her symptoms in the prison milieu will likely result in further deterioration in her mental condition and would continue to pose a risk to the safe running of the institution. In order to stabilize her psychiatrically, an inpatient hospitalization and therapeutic milieu is required. Hospitalization at [the] WSH offers her the best chance for stabilization of her severe and persistent mental disorder and I therefore recommend a transfer to this facility be initiated. In addition to Dr. Kahn, our Multi-Disciplinary Team consisting of the Psychologist, Casemanagers [sic] and representatives of Security and Medical departments all concur with this recommendation.

[¶ 22] By Motion for Ex Parte Order of Transfer filed on January 31, 2001, the Department of Corrections asked that, since Anderson had made no objection, she be transferred to WSH. An Ex Parte Order of Transfer was entered in the district court on February 2, 2001.

[¶ 23] Neither the record nor the briefs reflect Anderson's current status. Her appeal was docketed on October 23, 2000. On January 24, 2001, her attorney filed a motion to suspend proceedings and sought an order from this Court for a mental evaluation to determine her competency. That motion was denied on February 21, 2001. On March 14, 2001, her attorney filed an *Anders* brief.[11] On March 28, 2001, this Court issued an order denying her attorney's motion to withdraw and directing her attorney to file an adequate *Anders* brief or to file a brief addressing the merits of the appeal. On May 22, 2001, this Court issued an order granting permission for her attorney to withdraw and

---

**11.** So named after the case *Anders v. State of California*, 386 U.S. 738, 744–45, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). In a nutshell, an *Anders* brief is a brief filed by a defendant's attorney asking to withdraw as counsel and indicating that an appeal would be frivolous. In addition, the brief should point out anything that might arguably support an appeal, as well as allow the defendant adequate time to raise any points she may choose to address to the court.

directing the public defender to file a brief on the merits. That brief was filed on June 22, 2001. On September 20, 2001, the State filed its brief. On October 8, 2001, this case was assigned to the expedited docket, and after this Court's conference on November 27, 2001, it was assigned for the preparation of an opinion.

### Was There Evidence in the Record that Justified Revocation of Probation

#### STANDARD OF REVIEW

[¶ 24] Revocation of probation is largely governed by court rule. W.R.Cr.P. 39. The State is required to establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence. W.R.Cr.P. 39(a)(5). The probationer has the right to appear in person and by counsel and to confront and examine adverse witnesses, and the rules of evidence apply to the adjudicative phase.[12] W.R.Cr.P. 39(a)(5)(A) and (B); *also see* W.R.E 1101(a)(3).[13]

[¶ 25] A district court's decision to revoke probation is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion. The district court is required to make a conscientious judgment that the alleged violation occurred after considering the reasons underlying the conditions of probation, the violation of those conditions, and the reasons leading to the violation. *Moehr v. State*, 13 P.3d 1114, 1116 (Wyo.2000); *Johnson v. State*, 6 P.3d 1261, 1263 (Wyo.2000). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). The district court's determination that the probation agreement has been violated "must be based upon verified facts and must be made pursuant to due process protections[.]" *Counts v. State*, 899

P.2d 1341, 1343–44 (Wyo.1995) (quoting *Gailey v. State*, 882 P.2d 888, 891 (Wyo.1994)).

[¶ 26] In addition, we have also expressed a general agreement with the proposition that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful, or, if not willful, must presently threaten the safety of society. *Kupec v. State*, 835 P.2d 359, 362 (Wyo.1992); and *see Johnson*, 6 P.3d at 1263. We have also held that notice to a probationer of the grounds for revocation is fundamental and that failure of notice is a defect affecting a substantial right and may be prejudicial to the probationer's cause. *Shaw v. State*, 998 P.2d 965, 967–8 (Wyo.2000).

#### DISCUSSION

[¶ 27] The petition to revoke probation alleged multiple circumstances that might have served as bases for revocation. However, as is more fully set out above, the decision to revoke was based upon Anderson's failure to report to her probation agent in March of 2000 and her failure to complete counseling.

[¶ 28] There is direct evidence that Anderson failed to appear in person in March of 2000, though Anderson did testify, and a witness corroborated that testimony, that she attempted to make telephone contact with her probation agent. Whether it was fully deserved or not, the record was rife with unverified information indicating that Anderson was not a particularly credible witness. However, we are unable to conclude that this circumstance alone is an adequate basis for the revocation of her probation, given the record's clarity with respect to the fact that Anderson had been on probation for a period of about 33 months without apparent incident. We continue to agree that probation is a privilege and not a right. *Burk v. State*, 848 P.2d 225, 236 (Wyo.1993). Further, no violation of a probation agreement should be viewed as minor. *Collins v.*

---

**12.** Anderson's revocation hearing was held on May 31, 2000. Effective September 1, 2001, W.R.Cr.P. 39(a)(5)(B) was amended so that it now reads as follows: "The Wyoming Rules of Evidence shall apply to the adjudicative phase of probation revocation hearings; however, hearsay that is probative, trustworthy and credible may

be received into evidence. The Wyoming Rules of Evidence do not apply to the dispositional stage."

**13.** There appears to be a conflict between these two rules, as they now stand.

*State*, 712 P.2d 368, 371 (Wyo.1986). However, we must also give full recognition to the valuable and important rights that inhere in probation once it is granted. *See Pearl v. State*, 996 P.2d 688 (Wyo.2000).

[¶ 29] The initial evidence offered that Anderson did not attend and/or complete counseling was in the form of hearsay testimony from a probation agent, and appropriate objections were made and sustained. The only evidence in the record to support a conclusion that Anderson had not attended and/or completed counseling was then the probation agent's testimony that Anderson was required to prove her attendance at, and successful completion of, counseling, and that she had failed to do so. It is clear that W.R.Cr.P. 39(a)(5)(B), as it read during the proceeding applicable to Anderson, required that the rules of evidence be applied to the adjudicative phase of the proceedings to revoke her probation. In *Swackhammer v. State*, 808 P.2d 219, 223 (Wyo.1991), we held as follows at a time when the use of hearsay was less restricted than it was during the time the applicable version of W.R.Cr.P. 39 was in effect:

> The use of hearsay did not, in and of itself, constitute reversible error. Rule 1101(b)(3), W.R.E.,[14] provides that the rules of evidence do not apply in probation revocation proceedings. As we explained in *Collins v. State*, 712 P.2d 368, 371 (Wyo. 1986):
>
>> " * * * [T]he right of confrontation and cross-examination in a revocation hearing is not as positive as it is in a criminal proceeding. The admission of hearsay evidence without confrontation of wit-

nesses does not *ipso facto* amount to error in revocation proceedings."

This rule does not stand for the proposition, however, that the use of hearsay in revocation proceedings is without established parameters. In *Mason*, 631 P.2d at 1055–56, we stated rules for the use of hearsay evidence in such a situation:

> " * * * While hearsay is not categorically barred from revocation hearings, the hearsay admitted in this case was improper.
>
>> "It is impossible for the defendant to test the accuracy and truth of the State's witnesses if they are not at the hearing to give their testimony. * * * Both the defendant and the social system have a stake in making sure the factual determination in a revocation hearing is not an arbitrary one but is based on facts which pass the *Morrissey [v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)], truth-seeking test of cross-examination, * * *. In this case the only evidence presented was in the form of hearsay which the defense was unable to test and verify. This was a clear violation of the appellant's right to due process. *Anaya v. State*, [96] Nev. [119], 606 P.2d 156 (1980). The State must make a good-faith attempt to produce the witnesses at a probation—or parole—revocation hearing or else show cause why they cannot appear. If for some valid reason a witness is unavailable, whether or not the information may be introduced through hearsay will be deter-

---

14. We set out the full text of that rule below because the quoted discussion appears to have misapprehended the thrust of that rule, at least in part. We read the rule as excluding the adjudicatory phase of a probation revocation hearing from the application of the general rule that the rules of evidence do not apply.

**Rule 1101. Applicability of rules.**

(a) Rules Applicable.—Except as otherwise provided in subdivision (b), these rules apply to all actions and proceedings in the courts of this state.

(b) Rules Inapplicable. **The rules other than those with respect to privileges do not apply in the following situations:**

(1) Preliminary Questions of Fact.—The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a).

(2) Grand Jury.—Proceedings before grand juries.

(3) Miscellaneous Proceedings.—Proceedings for extradition or rendition; preliminary examination in criminal cases; sentencing, granting or **revoking probation** *other than adjudicatory hearings;* juvenile proceedings other than adjudicatory hearings; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

(4) Contempt proceedings in which the court may act summarily.

W.R.E. 1101 (emphasis added).

mined by the use of a balancing test. This test will weigh the defendant's interest in confronting and cross-examining the witnesses against him with the practical difficulties of producing the witness. *Anaya v. State,* supra."

This case stands for two propositions: (1) probation revocation may not be based solely on the use of hearsay evidence; and (2) if hearsay evidence is admitted, the trial court must apply the indicated balancing test before receiving such evidence. In this case, the introduction of hearsay evidence met the first requisite of *Mason* because the revocation of probation was not premised solely on the hearsay evidence.

*Also see* Annotation, *Admissibility of Hearsay Evidence in Probation Revocation Hearings,* 11 A.L.R.4th 999, esp. § 7(b) (1982 and Supp.2001).

[¶ 30] As we stated earlier, it was the State's burden to prove by a preponderance of the evidence that Anderson had not attended and/or completed counseling. This it did not do. It only proved that Anderson did not prove that she had completed counseling, and that was not the burden placed on her by the notice that her probation might be revoked. The record in this case demonstrates that the State chose to present an absolute minimum of evidence. The evidence presented included no documentation and no direct testimony from a witness who could speak to Anderson's attendance and/or failure to complete counseling, which was the only substantive allegation included in the petition. For these reasons, we are compelled to reverse the district court's order revoking Anderson's probation and vacate the sentence thereafter imposed.

[¶ 31] Although it does not directly effect the result of this case, it is necessary that we briefly comment on the prosecutor's twice-emphasized revelation to the district court that Anderson was "waving a knife around" on December 20, 1999. Clearly, if verified, such an occurrence would justify revocation of probation. We can only conclude that it was not verified, or that it was not verifiable,

since no admissible evidence of any sort was ever offered below. The prosecutor's announcements about this alleged event were the most damning "evidence" against Anderson. The district court should have taken action to sustain Anderson's objections and should have placed on the record a statement that the information was not considered either in revoking probation or in imposing sentence. While in many such circumstances we might afford the district court a presumption that such prejudicial, but unverified, unreliable and inadmissible, material was ignored in making weighty decisions such as those made here, it would be very difficult for us to do so under the circumstances of this case.

### Did the District Court Err in Failing to Establish a Factual Basis for Guilty Plea [15]

 [¶ 32] We set out Anderson's version of the circumstances of the crime to which she pleaded guilty above. The factual basis for accepting a guilty plea may be inferred from circumstances surrounding the crime and need not be established only from the defendant's statement. *Rude v. State,* 851 P.2d 15, 17–18 (Wyo.1993); *also see Barnes v. State,* 951 P.2d 386, 388–89 (Wyo. 1998). In this case, the only evidence presented was Anderson's admissions. However, the district court properly could infer from Anderson's recitation of the facts that she committed the aggravated assault and battery, even though Anderson "qualified" her admission with an excuse as to why she was justified in doing so. Thus, Anderson admitted the gravamen of the event, though it was coupled with what could be viewed as a defense that a jury might have treated as a basis for finding her not guilty. The mere fact that a bona fide defense might exist does not vitiate the entry of the guilty plea. *Johnston v. State,* 829 P.2d 1179, 1182 (Wyo. 1992). We hold there was a sufficient factual basis for the crime so that the district court did not err in accepting her guilty plea.

### CONCLUSION

[¶ 33] The State failed to present verifiable, admissible evidence to establish that

---

15. *McCarty v. State,* 883 P.2d 367, 371–72 (Wyo. 1994), provides that an appeal of this issue is

timely when probation is granted under Wyo. Stat. Ann. § 7–13–301.

Anderson failed to attend and/or complete assigned counseling. The evidence presented in that regard only proved that Anderson had failed to prove that she did complete such counseling. Such evidence will not suffice to sustain the revocation of her probation. In addition, there is a paucity of evidence in the record with respect to Anderson's performance on probation. The record suggests that Anderson failed to report in March of 2000, but that may have been the result of a genuine "misunderstanding." Moreover, the violation, if any, appears to be indisputably inconsequential, both in terms of its role in the revocation of a probationary term such as Anderson's and the risk that such a violation might pose to society and/or to the good discipline necessary to the functioning of probation. We are persuaded that it cannot, by itself, serve as a justification for revoking Anderson's probation given the state of the record on appeal.

[¶ 34] For the reasons set out in detail above, the order revoking Anderson's probation, as well as the order imposing sentence upon her, are reversed and vacated, and the matter is remanded to the district court for further proceedings consistent with this opinion.