2004 WY 23

**Elsadig Fouad SAMI, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 02–156, 02–234.**

Supreme Court of Wyoming.

March 12, 2004.

Representing Appellant: Donald J. Rissler, Riverton, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Elsadig Fouad Sami challenges the sufficiency of the factual basis underlying his guilty plea to felonious restraint and the sufficiency of the evidence to revoke his probation. We find that the factual basis was sufficient to support Sami's guilty plea and the evidence was sufficient to revoke his probation.

[¶ 2] The order of conviction is affirmed.

### ISSUES

[¶ 3] Sami presents this statement of the issues for our review:

I. Was there a proper factual basis presented at Appellant's July 12, 2002 change of Plea Hearing sufficient for the Court to enter a finding of Guilty?

II. Was the evidence presented at the Revocation Hearing sufficient to revoke the Appellant's probation?

The State rephrases the issues as:

I. Was the factual basis presented at the July 12, 2000, change of plea hearing sufficient to support the Appellant's guilty plea and his conviction for felonious restraint?

II. Did the district court abuse its discretion in revoking Appellant's probation?

### FACTS

[¶ 4] Sami was originally charged with first degree sexual assault. The probable cause affidavit alleged that Sami forced his victim to submit to anal intercourse, and preliminary medical reports indicated that the victim had blood on swabs taken of her anus. In July 2000, pursuant to a plea agreement, the prosecutor filed an Amended Information charging Sami with battery, a misdemeanor, in violation of Wyo. Stat. Ann. § 6–2–501, and felonious restraint, a felony, in violation of Wyo. Stat. Ann. § 6–2–202. Sami pled guilty to both battery and felonious restraint. The district court sentenced Sami for battery but deferred his guilty plea to felonious restraint, without entering a judgment of guilt or conviction, pending Sami's successful completion of three years of supervised probation in accordance with Wyo. Stat. Ann. § 7–13–301.[1]

[¶ 5] In March 2002, the State petitioned the district court to revoke Sami's probation, alleging that he violated a term of the "Probation/Parole Agreement" he had executed with the Department of Corrections, Division of Probation and Parole. After an evidentiary hearing, the district court revoked Sami's probation, entered a judgment of guilt or conviction for felonious restraint and sentenced Sami for that offense. Sami appealed from the district court's order revoking his

---

**1.** The relevant portion of Wyo. Stat. Ann. § 7–13–301 (LexisNexis 2003) states:

(a) If a person who has not previously been convicted of any felony is charged with or is found guilty of or pleads guilty or no contest to any misdemeanor except any second or subsequent violation of W.S. 31–5–233 or any similar provision of law, or any second or subsequent violation of W.S. 6–2–501(a) or (b) by a household member as defined by W.S. 35–21–102 against any other household member or any similar provision of law, or any felony except murder, sexual assault in the first or second degree, aggravated assault and battery or arson in the first or second degree, the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court.

probation and the district court's subsequent judgment and sentence for felonious restraint. These appeals were consolidated for our review.

## DISCUSSION

### Sufficiency of Factual Basis

[¶ 6] Sami first argues that the district court failed to obtain a sufficient factual basis to support the felonious restraint guilty plea. In particular, Sami contends that the factual basis developed at his change of plea hearing did not establish that he had restrained the victim under circumstances exposing her to a risk of serious bodily injury. Sami does not claim any other error with respect to the entry of his guilty plea.

[¶ 7] The elements of felonious restraint are set forth in Wyo. Stat. Ann. § 6–2–202 (LexisNexis 2003), which states:

(a) A person is guilty of felonious restraint if he knowingly:

(i) Restrains another unlawfully in circumstances exposing him to risk of serious bodily injury[.]

"Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." Wyo. Stat. Ann. § 6–1–104(a)(x) (LexisNexis 2003). "Bodily injury" means "physical pain, illness or any impairment of physical condition." § 6–1–104(a)(i).

[¶ 8] "The felonious restraint statute is violated when a risk of serious bodily injury occurs and the action causing that risk is an unlawful restraint." *Williams v. State,* 2002 WY 136, ¶ 9, 54 P.3d 248, ¶ 9 (Wyo. 2002). The statutory language "adopts that of the Model Penal Code," *id.,* and

requires proof that the accused acted knowingly, meaning he "must have been aware that he was restraining his victim, that the restraint was unlawful, and that it exposed the victim to [the requisite] physical danger."

*Id.,* ¶ 10 (quoting Model Penal Code § 212.2 cmt. 2, at 242 (Proposed Official Draft 1962)). It "does not require that ... these results

actually occur but only that the actor create a risk of such harm." Model Penal Code, *supra,* at 241. "This formulation reaches the actor who is reckless with respect to [the requisite] physical harm by punishing one who is aware of the risk thereof." *Williams,* ¶ 10 (quoting Model Penal Code, *supra,* at 243). "That the actor unlawfully restrains another under circumstances creating risk of serious harm is sufficient to call for felony sanctions and thus to differentiate this offense from the misdemeanor of false imprisonment." Model Penal Code, *supra,* at 240.

### 1.   Standard of Review

[¶ 9] W.R.Cr.P. 11(f) provides:

*Determining accuracy of plea.*—Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

This Court reviews the conduct of a hearing in which a guilty plea is entered as a whole. *Mehring v. State,* 860 P.2d 1101, 1106 (Wyo. 1993). "Our inquiry determines if the district court sufficiently described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea." *Id.* The intent of the procedural requirements is to prevent the individual charged with a crime from being misled into a waiver of substantial rights. *Id.* W.R.Cr.P. 11 requires that the district court satisfy itself that a factual basis exists for the guilty plea before accepting such plea. *Rude v. State,* 851 P.2d 15, 18 (Wyo.1993). A sufficient inquiry includes a determination that the defendant understood his conduct, in light of the law, to be criminal. *Barnes v. State,* 951 P.2d 386, 389 (Wyo. 1998). Rule 11 does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty nor does it require complete descriptions of the elements in accepting a plea. *Mehring,* 860 P.2d at 1108–09; *see* W.R.Cr.P. 11(b).

The courts of our land do not function with scripts requiring each participant to perform his or her specific part in the same

manner on each occasion. We should never mistake the presence of the printed or spoken word for comprehension. A ritualistic expression of verbiage, complete with legal terminology and excess, may provide a comfortable layer of support for technically demanding members of the bar, but would provide little real assurance that the accused actually understands what is about to be accomplished.

*Mehring,* 860 P.2d at 1108–09.

▬▬ [¶ 10] A record composed of the defendant's testimony and admissions and/or the state's presentation of evidence discloses a factual basis. The trial judge may properly draw inferences from the defendant's admissions or the evidence presented by the state to satisfy all elements of the crime to which the defendant is pleading guilty. *Rude,* 851 P.2d at 18.

### 2. *Factual Basis*

▬▬ [¶ 11] At the change of plea hearing in the instant case, Sami was sworn as a witness, and the following colloquy occurred:

The Court: ... Okay. Mr. Sami, tell me about April 5th, please. Tell me about [the victim]. Maybe I can just make it easier. Did you hit or push her or grab her in a rude or angry manner on that day?

Sami: Yes, Your Honor. I pushed down and lay on her top.

The Court: You—pardon?

Sami: I lay on her top. I push her down and lay on her.

The Court: And was this on or about April 5, 2000?

Sami: Yes, Your Honor.

The Court: And where was this? Was it in Riverton, Wyoming?

Sami: Yes, Your Honor.

The Court: Okay. And so you pushed her on [sic] laid on her top?

Sami: Uh-huh.

The Court: On the top of her body?

Sami: Yes, Your Honor.

The Court: Okay. And were you angry at her or—

Sami: We kind of have a little bit, kind—

The Court: Was it in a rude manner, an angry manner that you were on top of her?

Sami: It was in anger, My Honor.

The Court: Angry?

Sami: Yes.

The Court: Tell me again, Mr. Sami, about the felonious restraint. First of all, tell me where you were. You were still in Riverton. At your home; is that correct?

Sami: No. We were visiting in—I came from Fort Collins and we were at CWC Campus.

The Court: And that's in Riverton?

Sami: And that's in Riverton.

The Court: Okay.

Sami: And then after I lay on top of her, then I touch her breast.

The Court: Did you not let her get up, you unlawfully restrain her or—

Sami: I didn't force her doing anything.[2] I just touched her breast after lay on top of her.

The Court: [Prosecutor's name], can you— You didn't let her get up, though, did you?

Sami: No, Your Honor.

The Court: Okay. [Prosecutor's name]—I might—the Court might need some help. Do you have anything to flesh out the unlawful restraint? Mr. Sami admitting that he did not let her get up, that would satisfy that. But the—under circumstances exposing her to risk of serious bodily harm. Is there anything in the reports or—

[Prosecutor:] Yes, Your Honor. The State's evidence would have been, had this case gone to trial, that the sexual contact and intercourse that was engaged in was

---

**2.** Sami does not argue that this statement—vis a vis the prosecutor's subsequent representation that he would have produced unspecified evidence at trial that Sami engaged in nonconsensual sexual intercourse with the victim—somehow transformed Sami's guilty plea into a plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the acceptance of which plea may require that there be "strong evidence of actual guilt." *Johnston v. State,* 829 P.2d 1179, 1181 (Wyo.1992).

not consensual, and it would be our position that in that case, and either through means of the contact that's had at the time or on the basis that a victim might resist and be faced with retaliation if they do, we think that meets the element of exposing her to a risk of serious bodily injury.

The Court: Okay. Based on your testimony, Mr. Sami, as well as the explanation by the county attorney, I am going to find that there's a factual basis for your guilty plea to the misdemeanor battery, and that there is also a factual basis to your guilty plea of felonious restraint.

[¶ 12] Sami contends that this factual basis does not establish that the restraint occurred under circumstances creating a risk of serious bodily injury, an element of the crime of felonious restraint. Specifically, he contends that this record does not show that he caused any bodily injury to his victim. However, the crux of the debate is whether Sami's behavior (angrily throwing the victim on a bed, laying on top of her and preventing her from getting up, touching her breast, and then performing nonconsensual sexual intercourse on the unlawfully restrained victim) knowingly exposed the victim to the risk of physical pain, illness or any impairment of physical condition which causes impairment of the function of any bodily member or organ. We think that a district court in seeking a factual basis for a guilty plea to felonious restraint can, without more, infer that the victim of restrained, forcible nonconsensual sexual intercourse was subjected to such violence from that particular act that the court could reasonably conclude that she had been *exposed* to a *risk* of serious bodily injury. See *Rude*, 851 P.2d at 18 (the element of premeditation can be inferred from all of the facts and circumstances). Additionally, the prosecutor also reasoned that the defendant's criminal conduct exposed the victim to *risk of* serious bodily injury, as statutorily defined, if she tried to resist that conduct and the defendant in his angry state retaliated against her. The *risks of* serious bodily injury are established by both the defendant's words and the prosecutor's words. We hold that the factual basis was sufficient to support the defendant's guilty plea.

## Probation Revocation

[¶ 13] As part of his Section 301 probation agreement, Sami agreed to a number of terms including obeying all laws and truthfully reporting contacts with law enforcement. On March 11, 2002, the State filed a petition to revoke Sami's Section 301 probation status for violations of these terms. The petition was based on assertions that Sami had been investigated by the Laramie police for inappropriately touching a sixteen-year-old girl; that a protective order had been entered against Sami for committing acts of domestic abuse against the victim; and that Sami had failed to report his contact with police regarding the abuse allegations.

[¶ 14] After Sami denied the allegations, the district court held a hearing on the petition, received evidence and witnesses' testimony and ruled that Sami had willfully failed to report a police contact to his probation officer. Sami's probation was revoked, and he was sentenced to a prison term that was suspended for five years of supervised probation. Sami contends that the evidence presented at the hearing was insufficient for the district court to revoke his probation. He further contends that his failure to report law enforcement contact was not willful and the district court abused its discretion in revoking his probation.

### 1. *Standard of Review*

[¶ 15] A district court's decision to revoke probation is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion. *Anderson v. State*, 2002 WY 46, ¶ 25, 43 P.3d 108, ¶ 25 (Wyo.2002). "The district court is required to make a conscientious judgment that the alleged violation occurred after considering the reasons underlying the conditions of probation, the violation of those conditions, and the reasons leading to the violation." *Id.* Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.* "The district court's deter-

mination that the probation agreement has been violated must be based upon verified facts and must be made pursuant to due process protections." *Id.* (internal quotation marks omitted). "[I]n order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful, or, if not willful, must presently threaten the safety of society." *Id.,* ¶ 26.

## 2. *Evidence of Willful Violation*

■■ [¶ 16] At the hearing, Sami's probation officer testified that he had learned from police that Sami was under investigation for sexual assault on a minor. That investigation did not result in any charges; however, a motion for a protective order was filed that resulted in a finding that Sami had committed an act of domestic abuse against the minor. After the protective order was entered against him, Sami contacted an attorney who advised that the proceedings were civil in nature and should not have any effect upon Sami's Section 301 probation status. Sami contended that he believed that he only had to report criminal proceedings to his probation officer and, based upon the legal advice that the protection order proceedings were civil, he did not feel he would violate the terms of his probation by not reporting the proceedings to his probation officer. At his next meeting with his probation officer, Sami was required to complete a written questionnaire that asked whether Sami had been in contact with law enforcement since his last report. Sami marked the box "no." Sami's probation officer questioned Sami about the incident, and Sami then reported it to his probation officer. Nevertheless, the probation officer filed an affidavit which led to the State's filing of a petition to revoke probation.

[¶ 17] The district court determined that it did not have to determine whether civil or criminal proceedings had occurred or whether Sami had committed an act of physical abuse against the minor. The court ruled:

But the simple issue before this Court is, did Mr. Sami obey the simple rules of the probation and parole agreement? And about—out of those 12 rules, probably 8 of

them could be boiled down to, you have to be truthful and honest with your probation officer.

The Court found it a little incredible—more than a little incredible—that you, Mr. Sami, would not mention this contact, and that you didn't understand to check the box. You have been checking those boxes for a year and a half.... And yet, you immediately took those papers and went running to see an attorney because you thought there might be some—there might be some problem.

The district court determined that Sami had intentionally failed to reveal contact with law enforcement and revoked his probation.

■■ [¶ 18] Although the record adequately supports the district court's finding that Sami intentionally marked the box "no," Sami contends that the violation was not willful and was the result of communication problems he experienced because he does not speak English very well. The district court determined that Sami's testimony was not credible. "Upon review, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation had been violated." *Mapp v. State,* 929 P.2d 1222, 1225 (Wyo. 1996). The record shows the district court properly concluded Sami's violation of his probation agreement was willful and we find no abuse of discretion. The order revoking probation is affirmed.

### CONCLUSION

[¶ 19] The district court could properly infer from the defendant's admissions and the State's presentation of evidence that Sami had exposed his victim to the risk of serious bodily injury by his unlawful restraint by nonconsensual sexual intercourse. We uphold the district court's ruling that a sufficient factual basis existed for Sami's guilty plea. The district court's ruling that Sami had willfully violated a term of his probation agreement is supported by a record showing Sami had intentionally stated that he had no law enforcement contact although he had been the subject of a police investigation for physical abuse of a minor.

The district court's order revoking Sami's probation is affirmed.