2005 WY 70

**Eli MAES, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 04–112.

Supreme Court of Wyoming.

June 28, 2005.

Representing Appellant: Tonya A. Morse, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James Michael Causey, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and SANDERSON, D.J.

KITE, Justice.

[¶1]   In a change of plea hearing arising out of three separate proceedings, Eli Maes pleaded guilty to: 1) one count of receiving stolen property; 2) two counts of attempted voluntary manslaughter; and 3) one count of soliciting perjury.   After being sentenced to a term of years for each offense, Mr. Maes appealed, claiming his guilty pleas were not voluntary and the guilty plea for attempted manslaughter lacked a factual basis.   We affirm.

## ISSUES

[¶2]   Mr. Maes states the issues as follows:

1.   Whether the appellant's guilty pleas were voluntary?

2.   Whether a factual basis existed for appellant's convictions for attempted manslaughter?

The State rephrases the issues as:

I.   Were appellant's guilty pleas voluntarily entered?

II.   Were there sufficient factual bases for appellant's guilty pleas to two counts of attempted manslaughter?

## FACTS

[¶3]   In January of 2003, a concrete chop saw was stolen from a construction site in Laramie County, Wyoming.   A few days later, Mr. Maes attempted to sell a concrete chop saw to A1 Rental in Cheyenne.   A1 Rental checked with law enforcement and was informed the saw was stolen.   When A1 Rental informed Mr. Maes the saw was stolen, he immediately left the store without the saw.   On March 21, 2003, Mr. Maes was arrested for receiving stolen property in violation of Wyo. Stat. Ann. § 6-3-403(a)(i)

(LexisNexis 2003). At his arraignment, Mr. Maes pleaded not guilty to the charge.

[¶ 4] On July 14, 2003, while out on bond awaiting trial on the receiving stolen property charges, Mr. Maes was involved in an altercation outside a Laramie County bar, during which he pointed a gun first at his wife and then at a friend and threatened to kill them. Mr. Maes was arrested and charged with two counts of attempted second-degree murder in violation of Wyo. Stat. Ann. §§ 6–1–301(a) and 6–2–104 (LexisNexis 2003). Mr. Maes pleaded not guilty to those charges.

[¶ 5] On December 31, 2003, while Mr. Maes was in jail awaiting trial on the other charges, his wife visited him at the detention center and they talked by videophone. During their conversation, Mr. Maes allegedly encouraged his wife to change her story about the July altercation to match his. The conversation was recorded and Mr. Maes was charged with solicitation to commit perjury in violation of Wyo. Stat. Ann. §§ 6–1–302(a) and 6–5–301(a) (LexisNexis 2003). Like the other charges pending against him, Mr. Maes initially pleaded not guilty to this charge.

[¶ 6] Just before the State filed the solicitation to commit perjury charges, the parties reached a plea agreement. Under the terms of the agreement, Mr. Maes agreed to plead guilty to all of the charges filed against him and the State agreed to reduce the attempted second-degree murder charges to attempted manslaughter, not to pursue conspiracy to commit perjury charges against Mr. Maes' wife and to obtain the U.S. Attorney's agreement not to file federal charges against him.

[¶ 7] On January 8, 2004, in accordance with the plea agreement, Mr. Maes changed his plea to guilty on all of the charges. At a sentencing hearing on April 5, 2004, the court sentenced Mr. Maes to concurrent terms of two to four years on the receiving stolen property and conspiring to commit perjury charges and four to seven years on each count of attempted manslaughter, to be served concurrent to each other and consecutive to the two to four year sentences.

## STANDARD OF REVIEW

[¶ 8] Our review of Mr. Maes' claim that his plea was not voluntary is governed by W.R.Cr.P. 11(d), which provides as follows:

(d) *Insuring that plea is voluntary.*—The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

Strict adherence to the rule is required and any deviation from the procedure set forth therein must be harmless beyond a reasonable doubt or a defendant must be allowed to enter a new plea. *Bird v. State*, 939 P.2d 735, 737 (Wyo.1997).

[¶ 9] We review claims that a guilty plea was not voluntary *de novo*. *Van Haele v. State*, 2004 WY 59, ¶ 12, 90 P.3d 708, ¶ 12 (Wyo.2004). Based upon the totality of the circumstances, we determine whether the district court sufficiently described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea. *Id.,* ¶ 13. A guilty plea is valid where the totality of the circumstances demonstrates that a defendant made a voluntary and intelligent choice to plead guilty from alternative courses of action available to him and understood the consequences of his plea. *Herrera v. State*, 2003 WY 25, ¶ 17, 64 P.3d 724, ¶ 17 (Wyo.2003); *Major v. State*, 2004 WY 4, ¶ 11, 83 P.3d 468, ¶ 11 (Wyo.2004).

[¶ 10] Our review of Mr. Maes' claim that there was not a sufficient factual basis for his guilty pleas to the attempted manslaughter charges is governed by W.R.Cr.P. 11(f), which provides as follows:

(f) *Determining accuracy of plea.*—Notwithstanding the acceptance of a plea of

guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

This provision does not require proof beyond a reasonable doubt that a defendant who pleads is actually guilty; the rule's standard is much lower. Rule 11(f) merely requires the court to satisfy itself that a factual basis exists for the guilty plea before accepting the plea. *Van Haele,* ¶ 27.

## DISCUSSION

### 1. Voluntariness of Pleas

■ [¶ 11] The thrust of Mr. Maes' claim that his plea was not voluntary is that he entered the plea in order to protect his wife from prosecution. He asserts he had no choice but to agree to the prosecutor's wishes in order to protect his family. The State responds that the reference to Mr. Maes' wife was placed in the agreement at his request, Mr. Maes (and his wife) received the benefit of his agreement with the State, the district court strictly complied with W.R.Cr.P. 11, and the record clearly shows Mr. Maes' plea was voluntary.

[¶ 12] Given the requirement of strict adherence to W.R.Cr.P. 11, we begin our review with consideration of what transpired at the change of plea hearing. The hearing transcript reflects that the district court addressed Mr. Maes personally in open court, advising him of his right to plead not guilty, including his right to proceed to trial represented by counsel, and the rights he would waive by pleading guilty. The court also advised him of the nature of the charges against him and the possible penalties. Mr. Maes stated that he understood his rights, the charges against him and the possible penalties.

■ [¶ 13] The district court then inquired about the plea agreement. Defense counsel stated Mr. Maes felt the plea was the best way to proceed given the prosecution's agreement not to file charges against his wife and to seek the U.S. Attorney's agreement not to pursue federal charges against him. A few minutes later, defense counsel reiterated: "The driving point of the plea for Mr.

Maes is that the state has secured a promise from the U.S. Attorney's Office that they would not pursue the federal charges, that they would not charge his wife with conspiracy to commit perjury. . . ." The district court expressed concern with a guilty plea entered by a defendant in order to protect a family member from criminal charges. The State responded that the provision was put in the agreement to allay Mr. Maes' fears that he would plead guilty and the State would file charges against his wife anyway. The State also asserted this type of provision had appeared in plea agreements a number of times before and as long as the plea is knowing and voluntary, it is an appropriate condition. The court and Mr. Maes then had the following exchange:

> THE COURT: ... Mr. Maes, do you understand everything that is going on here today?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: The way this works is that once we've taken the plea, the Court ascertains that there's a factual basis, the Court would order a presentence investigation report. Once that has been completed, we would come back into court and the Court would make a decision as to an appropriate sentence. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: With regards to Docket 27–602 [the receiving stolen property charge]—I guess the other point is, regardless of the sentence that the court imposes, you would not be allowed to withdraw your plea. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you still willing to go forward?
>
> THE DEFENDANT: Yes, Your Honor.

The district court then read the charges filed against Mr. Maes in each of the three proceedings, asking him how he wished to plead after the reading of each charge was completed. With respect to the receiving stolen property charge, Mr. Maes stated "guilty." When asked how he would plead to the solicitation of perjury charge, Mr. Maes initially

responded, "I guess guilty, Your Honor." Then, the following exchange occurred:

THE COURT: It's either—

THE DEFENDANT: I'm guilty. I'm guilty. I ain't going to waste the Court's time, Your Honor, over this. I wasn't trying to coach nobody.

THE COURT: I understand, just hold on just a second.

THE DEFENDANT: I'm guilty.

THE COURT: Your plea is guilty?

THE DEFENDANT: Yes, Your Honor.

When asked how he would plead to Count I of attempted voluntary manslaughter, Mr. Maes responded, "Alford plea." [1] The transcript of the hearing then reads as follows:

THE COURT: Right. But as to Count I, do you plead guilty?

THE DEFENDANT: An Alford plea, yeah, I guess. Yeah. What she says, Your Honor.

THE COURT: This is up to you. As to Count I, do you plead guilty or not guilty? (Off-the-record discussion.)

THE DEFENDANT: Alford plea. (Off-the-record discussion.)

THE DEFENDANT: I guess that means I'm guilty. I am guilty then.

THE COURT: As to Count II, how do you plead?

THE DEFENDANT: I am guilty.

THE COURT: Please raise your right hand. (Whereupon, the defendant was administered the oath by the Court.)

THE DEFENDANT: Yes, Your Honor.

THE COURT: How old are you?

THE DEFENDANT: 23 years old.

THE COURT: Are you under the influence of any alcohol, medication, or drugs?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there anything that prevents you from understanding what is going on here today?

THE DEFENDANT: No, Your Honor.

THE COURT: Were the pleas you just entered in all of these counts voluntary?

THE DEFENDANT: Yeah—yes.

THE COURT: Were they the result of any force or threats or promises except for the plea agreement?

THE DEFENDANT: I'll accept the plea agreement to not touch my wife.

[¶ 14] Based upon this record, there is no question the district court complied with the procedural requirements of W.R.Cr.P 11(d). The only question is whether Mr. Maes' plea was voluntary given that it was motivated in part by his desire to obtain the State's agreement not to prosecute his wife. Although this issue was presented to this Court once before, in *Britain v. State*, 497 P.2d 543 (Wyo.1972), we did not address it.

[¶ 15] In *Britain*, the defendant claimed his guilty plea was not voluntary because he entered it to avoid the prosecution of his wife and son. We never reached the issue because we found the district court failed to comply with W.R.Cr.P. 15's (now W.R.Cr.P 11) requirements to address the defendant personally to determine that the plea was voluntary with an understanding of the nature of the charge and the consequences of the plea. On that basis, this Court remanded the case with instructions to set aside the defendant's plea and permit him to enter a new plea. Of relevance to the issue currently before us, however, we said: "The fact that the attorneys resolved matters as they did [i.e., with the prosecutor's promise not to prosecute other family members] in this case does not in and of itself prove that defendant's plea was involuntary." *Britain*, 497 P.2d at 544.

[¶ 16] Since *Britain*, we have not had occasion to consider whether a guilty plea arising from an agreement not to prosecute a family member was voluntary. We have considered, however, whether a plea was voluntary under other circumstances and have stated the test for determining whether a plea is voluntary as follows:

1. An Alford plea allows an individual accused of a crime to voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Rodriguez v. State*, 917 P.2d 172, 175 (Wyo. 1996) (citations omitted). Where a defendant repeatedly affirms his intent to plead and states he understands the proceedings, we have said that he entered into the plea agreement on his own volition with full awareness of the consequences and it was, therefore, knowing and voluntary. *Major*, ¶ 23.

[¶ 17] Courts in other jurisdictions have addressed squarely the issue of whether a plea entered to protect a family member was voluntary. In *Miles v. Dorsey*, 61 F.3d 1459 (10th Cir.1995), the defendant claimed he was coerced into pleading by the government's threats to imprison his family unless he entered a plea. He claimed he entered the plea involuntarily in order to protect his family. The Tenth Circuit rejected his claim, stating:

> In the absence of facts demonstrating that the government prosecuted his family without probable cause in an attempt to gain leverage over Petitioner, the fact that he entered his plea out of a desire to protect his validly indicted family from further prosecution, does not render an otherwise voluntary plea involuntary.

*Id.*, at 1469. Other courts that have addressed the issue have reached similar results. *United States v. Bellazerius*, 24 F.3d 698, 704 (5th Cir.1994) (guilty plea induced by promise of leniency toward defendant's wife was not involuntary); *United States v. Bartoli*, 572 F.2d 188 (8th Cir.1978) (guilty plea was not coerced where entered by defendant pursuant to condition that indictment against defendant's father be dismissed); *United States v. Vest*, 125 F.3d 676 (8th Cir.1997) (nothing in the record suggested the government did not act in good faith in obtaining defendant's guilty pleas, and, in fact, it appears that he entered the guilty pleas not as an act of self-sacrifice for his brother, but rather as an attempt to avoid the harsher death sentence himself.); *United States v. Armas*, 11 Fed.Appx. 899 (9th Cir. 2001) (record was clear that defendant pled guilty of his own volition, although undoubtedly influenced by a desire to help his wife and family.)

[¶ 18] With these cases in mind and applying our own test for determining whether a guilty plea was voluntary, we hold Mr. Maes has failed to establish that his plea was involuntary. The record suggests he was fully aware of the direct consequences of his plea, including the actual value of the commitments made to him by the State. He understood, for example, that in exchange for his guilty plea, the State would reduce the attempted second-degree murder charges to attempted manslaughter. Additionally, he knew that in exchange for his plea the State would obtain the U.S. Attorney's agreement not to file federal charges against him. And he knew that the State would not file conspiracy to commit perjury charges against his wife.

[¶ 19] There is no indication from the record that Mr. Maes' plea was induced by threats, misrepresentation, or improper promises. There likewise is no indication the State manufactured the potential charges against his wife in order to pressure Mr. Maes into pleading guilty. The district court heard the recorded conversation between Mr. Maes and his wife and was persuaded a factual basis existed for Mr. Maes' plea to conspiracy to commit perjury. If anything, the record suggests that Mr. Maes' plea was induced by an agreement under which he benefited significantly in ways unrelated to the potential charges against his wife. By agreeing to plead, Mr. Maes avoided more serious state charges and potential federal charges. The fact that his wife also benefited, and that his decision to plead may have been motivated in part by a desire to protect her, does not render his plea involuntary.

## 2. Factual Basis for Plea to Attempted Manslaughter

[¶ 20] Mr. Maes contends an adequate factual basis did not exist for his guilty

plea to the attempted manslaughter charges because at the change of plea hearing he denied committing an essential element of the crime. Specifically, he asserts that attempted manslaughter requires the intent to kill and commission of a substantial step toward that end. He argues there was not an adequate factual basis for his plea because he stated at the hearing that he never intended to kill anyone and did not pull the trigger. The State asserts the district court had sufficient information to support acceptance of the plea.

[¶ 21] The intent of the procedural requirement of a factual basis is to prevent the individual charged with a crime from being misled into a waiver of substantial rights. *Sami v. State,* 2004 WY 23, ¶ 9, 85 P.3d 1014, ¶ 9 (Wyo.2004). A sufficient inquiry to obtain a factual basis includes a determination that the defendant understood his conduct, in light of the law, to be criminal. *Id.* However, the factual basis for accepting a plea may be inferred from circumstances surrounding the crime and need not be established only from the defendant's statements. *Id.* W.R.Cr.P. 11 does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty nor does it require complete descriptions of the elements. *Id.* Acceptance of an Alford plea, however, does require strong evidence of actual guilt to negate the claim of innocence and provide a means by which the trial court can test whether the plea was intelligently entered. *Johnston v. State,* 829 P.2d 1179, 1181 (Wyo.1992).

[¶ 22] Applying these standards in *Van Haele,* we concluded an adequate factual basis was provided to support the plea to aggravated assault where:

> Van Haele clearly admitted that after he kicked in the doors of the victim's vehicle, a fracas ensued between himself and the victim. Thereafter, Van Haele realized that a Leatherman tool was in his pocket so he unfolded it under his belly and stabbed the victim. Moreover, both the victim and Ms. Van Haele gave their eyewitness testimony substantiating these facts. Numerous other witnesses who later arrived at the scene testified they saw that the victim had been stabbed and Van Haele admitted to them that he had stabbed the victim. The Leatherman tool was found at the scene and was identified as being in Van Haele's possession. Additionally, Dr. Walter H. Gould testified that the stabbing wound resulted in the laceration of the victim's skin and lung causing bleeding into the chest cavity, which had to be drained. The victim was required to stay in the hospital for four days as a result of the injury he sustained.

*Van Haele,* ¶ 30.

[¶ 23] Similarly, in *Sami,* ¶ 12, we said:

> Sami contends that [the] factual basis does not establish that the restraint occurred under circumstances creating a risk of serious bodily injury, an element of the crime of felonious restraint. Specifically, he contends that this record does not show that he caused any bodily injury to his victim. However, the crux of the debate is whether Sami's behavior (angrily throwing the victim on a bed, laying on top of her and preventing her from getting up, touching her breast, and then performing nonconsensual sexual intercourse on the unlawfully restrained victim) knowingly exposed the victim to the risk of physical pain, illness or any impairment of physical condition which causes impairment of the function of any bodily member or organ. We think that a district court in seeking a factual basis for a guilty plea to felonious restraint can, without more, infer that the victim of restrained, forcible nonconsensual sexual intercourse was subjected to such violence from that particular act that the court could reasonably conclude that she had been exposed to a risk of serious bodily injury. Additionally, the prosecutor also reasoned that the defendant's criminal conduct exposed the victim to risk of serious bodily injury, as statutorily defined, if she tried to resist that conduct and the defendant in his angry state retaliated against her. The risks of serious bodily injury are established by both the defendant's words and the prosecutor's words. We hold that the factual basis was sufficient to support the defendant's guilty plea.

[¶ 24] The record in the present case reflects that the district court first asked the State for the factual basis for the attempted manslaughter charge. Relying on the affidavit of probable cause, the State responded that on July 14, 2003, law enforcement received a call concerning a disturbance at the Cowboy South Bar involving a man with a gun. Witnesses at the scene identified Mr. Maes as the individual with the gun. They described what Mr. Maes was wearing and the gun he had in his possession and said he fled the bar on foot through an adjacent property after the altercation.

[¶ 25] The State informed the district court that witnesses stated the altercation occurred when Mr. Maes returned to the bar from taking his cousin and her boyfriend home and thought he saw his brother kissing his wife in the parking lot. Mr. Maes confronted his brother and a struggle ensued. Mr. Maes made statements to his wife to the effect that he was going to kill her and produced a gun. In the process, he struck one of the witnesses in the face with the gun. Another witness knocked the gun out of his hand, slammed him up against the pickup and began choking him, at which point Mr. Maes' brother told the witness to let Mr. Maes go. The witness complied and Mr. Maes retrieved the gun, pointed it at the man who choked him and threatened to kill him. The witnesses saw Mr. Maes run from the bar across the adjacent field and, after his arrest, identified him as the man holding the gun and making the threats. Thorns like those found in the field to which witnesses stated Mr. Maes ran were found in his clothes and in the chamber of the gun. The gun was found later in Mr. Maes' garage in a stack of tires.

[¶ 26] The district court asked whether there was evidence that Mr. Maes pointed the gun and attempted to shoot his wife and the other witness. The State replied that witnesses saw him pulling the trigger and working the slide as he made the threats. The district court then asked defense counsel whether she conceded that the State would present the evidence described and that it established an adequate factual basis for acceptance of the plea. Defense counsel responded that she believed the evidence described was what the State would prove at trial. In addition, she stated:

... Of course, during the course of the trial we would be presenting maybe some different facts.

I don't know how salient they would be, but namely that Mr. Maes was not going to shoot anybody. He didn't intend to hurt anybody and that's where the Alford plea comes in. He admits that he had the gun and pointed it at the group there.

... I think Mr. Maes still would like to talk to the Court. I have advised him that most of what he is going to say is more appropriate for sentencing purposes, but he would tell the Court he didn't intend to hurt anyone or was going to kill anyone.

The following exchange then occurred between the court and Mr. Maes:

THE COURT: Mr. Maes, do you agree with what [defense counsel] just said also?

THE DEFENDANT: To a point. I'd like to state my own opinion on it, you know.

THE COURT: Hold on just one second. Were you present at the Cowboy Bar on July 14, 2003?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you had a weapon with you?

THE DEFENDANT: Yes, I did.

THE COURT: That was the gun [the State] was referring to?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You did point that gun?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: And your contention IS you didn't intend to kill anybody though?

THE DEFENDANT: No, Your Honor, I did not.

The district court asked defense counsel whether she conceded there was a factual basis and she responded affirmatively. The district court then found there was a factual basis for the attempted manslaughter charge.

[¶ 27] Later in the proceedings, the district court allowed Mr. Maes to describe in his own words what happened in the bar

parking lot. He reiterated that he thought he saw his wife and brother kissing. He was angry and confronted his brother. He grabbed the gun with the intent of leaving when he saw someone coming at him out of the corner of his eye. He swung around pointing the gun and accidentally struck his friend's wife. His friend knocked the gun out of his hand and started choking him. He broke free, grabbed the gun and pointed it at his friend because it looked like his friend was coming after him. Then he backed away, the bouncer grabbed him, and he broke free and took off through the adjacent lot. Mr. Maes also stated that he never intended to hurt anybody but to keep his wife out of jail and his kids from being taken, he would take a plea bargain of anything.

[¶ 28] Despite Mr. Maes' assertion that he did not intend to hurt anyone, we conclude there was a sufficient factual basis for the district court to accept the plea. Mr. Maes conceded that he pulled a gun and pointed it at his friend. The State was prepared to offer other testimony at trial showing that he also pointed the gun at his wife and that he made statements both to his wife and his friend to the effect that he was going to kill them. From Mr. Maes' own statements and from inferences made from circumstances surrounding the crime, we hold the factual basis was sufficient to support acceptance of the plea.

[¶ 29] Affirmed.