2010 WY 93

**Michael Angelo SENA, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0192.

Supreme Court of Wyoming.

June 30, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Michael H. Reese, Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Michael Angelo Sena, Jr., claims the district court did not follow the required procedures when it accepted his plea of no contest to a charge of battery. We conclude that the procedural requirements were met, and affirm.

### ISSUE

[¶ 2] The issue stated by Mr. Sena is "Whether the trial court failed to comply with the procedural requirements of Rule 11 of the Wyoming Rules of Criminal Procedure."

### FACTS

[¶ 3] On August 15, 2008, an information was filed against Mr. Sena, charging him with "Battery—Third Offense Domestic," in violation of Wyo. Stat. Ann. § 6-2-501(b) and (f)(ii) (LexisNexis 2007).[1] According to the

---

1. The pertinent portions of this statute read as follows:

   (b) A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another....

   (f) A household member as defined by W.S. 35-21-102 who commits a second or subsequent battery against any other household member shall be punished as follows: ...

   (ii) A person convicted upon a plea of guilty or no contest or found guilty of a third or subsequent offense under this subsection against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of

affidavit of probable cause filed in support of the information, Mr. Sena's girlfriend was giving him a ride in her car. He was extremely intoxicated. While they were stopped at an intersection, Mr. Sena started punching her and pulling her hair. She opened the driver's door, and fell from the car. Mr. Sena fell on top of her, hitting and biting. She escaped, ran to a hiding place, and called the police.

[¶ 4] The responding officer found her still in hiding. He observed that she was extremely upset, and had "numerous abrasions, cuts, and bite marks over her body." He found Mr. Sena passed out in the car, with scratches on his face and blood on his hands. The officer placed him under arrest. He and his girlfriend were taken to the hospital for medical attention. Mr. Sena was then taken to jail.

[¶ 5] On September 18, 2008, Mr. Sena entered a plea of not guilty, and was released on bond pending trial. On February 18, 2009, Mr. Sena appeared before the court on a motion to modify his bond. At the start of this hearing, defense counsel told the court that Mr. Sena was prepared to change his plea to no contest. As defense counsel explained, "the reason for the no contest plea," as opposed to a guilty plea, "is that he was highly intoxicated on the night and day that this occurred and has a very limited memory of what occurred." Defense counsel informed the court that there was a "limited" plea agreement: there was no agreement as to sentencing, but the prosecution agreed not to object to Mr. Sena's request to be released on bond until sentencing, allowing him to participate in a residential treatment program.

[¶ 6] The court advised Mr. Sena of his rights, and engaged him in a colloquy to determine whether the requirements for accepting the no contest plea were met. This colloquy is at the heart of Mr. Sena's appeal, and additional details will be considered in the discussion below. The court found that there was a sufficient factual basis for accepting the no contest plea, and that the plea was made voluntarily and knowingly. It then accepted Mr. Sena's no contest plea. It ordered a Presentence Investigation Report, and told Mr. Sena that after the report was filed, he would be sentenced at the court's discretion. In accordance with Mr. Sena's request, and without objection from the prosecution, the court released Mr. Sena on bond. Conditions of his bond included no contact with his girlfriend and successful completion of the residential treatment program.

[¶ 7] Mr. Sena enrolled in the treatment program, but was soon terminated from it because he had contacted his girlfriend. His bond was revoked, and he was sent to jail pending sentencing. At the sentencing hearing on July 2, 2009, Mr. Sena's defense counsel noted that Mr. Sena had already spent approximately ten months in jail on this charge, and urged the court to sentence him to time served, followed by enrollment in a residential treatment program, then intensive supervised probation. The prosecution emphasized Mr. Sena's lengthy criminal record, which included several prior convictions for batteries against girlfriends, and advocated a sentence of three to five years imprisonment. The court stated that it had reviewed all of the sentencing alternatives, but found that other options "are not appropriate and that it is necessary to impose a sentence of incarceration." Mr. Sena received a sentence of thirty to sixty months imprisonment, with credit for time already served. Mr. Sena appealed.

## DISCUSSION

[¶ 8] Mr. Sena's broad contention that the court did not comply with W.R.Cr.P. 11 is divided into three specific issues. First, he claims that the court did not properly advise him of the elements of the crime charged. Second, he maintains that the court did not tell him whether he could or could not with-

W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member within the previous ten (10) years is guilty of a felony punishable by imprisonment for not

more than five (5) years, a fine of not more than two thousand dollars ($2,000.00), or both.

The Wyoming legislature amended this statute in 2009, but in ways that do not affect this appeal. *See* 2009 Wyo. Sess. Laws ch. 124.

draw the plea. Third, he asserts that the court did not advise him that his sentence could be affected by the Addicted Offender Accountability Act. The State counters that the district court met all of the requirements of Rule 11, with "every 'i' dotted and every 't' crossed."

[¶ 9] Rule 11 sets forth procedures "for courts to use in determining that a defendant's plea is intelligent, knowing and voluntary and entered with an understanding of the consequences." *Thomas v. State*, 2007 WY 186, ¶ 9, 170 P.3d 1254, 1257 (Wyo.2007). The general purpose of the rule is "to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *Britain v. State*, 497 P.2d 543, 545 (Wyo.1972) (interpreting former W.R.Cr.P. 15, now W.R.Cr.P. 11, and quoting *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969)).

> Claims regarding the voluntariness of a guilty plea are reviewed *de novo*. *Maes v. State*, 2005 WY 70, ¶ 9, 114 P.3d 708, 710 (Wyo.2005); *Van Haele v. State*, 2004 WY 59, ¶ 12, 90 P.3d 708, 711 (Wyo.2004). We examine the procedure utilized to accept a guilty plea as a whole to determine if the trial court "sufficiently described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea." *Id.*[, ¶ 11, 90 P.3d at 711 (emphasis omitted).] These procedural requirements are intended to assure that the defendant is not misled into an unintentional waiver of substantial rights. *Reyna v. State*, 2001 WY 105, ¶ 9, 33 P.3d 1129, 1132 (Wyo. 2001); *McCarty v. State*, 883 P.2d 367, 372 (Wyo.1994). A guilty plea will stand where the totality of the circumstances demonstrates that the defendant made a voluntary and intelligent choice to plead guilty from alternative courses of action available to him and understood the consequences of his plea. *Maes*, ¶ 9, 114 P.3d at 710.

*Craig v. State*, 2007 WY 122, ¶ 8, 163 P.3d 828, 830–31 (Wyo.2007). Mr. Sena did not enter a guilty plea, but rather a no contest or "nolo contendere" plea. However, "[f]or purposes of appellate review, a nolo contendere plea is functionally equivalent to a guilty plea." *Major v. State*, 2004 WY 4, ¶ 11, 83 P.3d 468, 472 (Wyo.2004). We therefore apply the same *de novo* standard of review.

[¶ 10] Rule 11 has been described as "lengthy and complex." *Reyna*, ¶ 7, 33 P.3d at 1131. Because Mr. Sena has raised three separate and discrete issues, it is unnecessary to quote or analyze the rule in its entirety. Instead, we will focus on those portions of the rule relevant to the issues raised by Mr. Sena.

### Did the court err by failing to advise Mr. Sena of the nature of the crime charged?

[¶ 11] Rule 11(b)(1) requires a court, when accepting a plea of guilty or nolo contendere, to "address the defendant personally in open court and ... determine that the defendant understands ... [t]he nature of the charge to which the plea is offered." We have explained that, "To be informed of 'the nature of the charge' means that the defendant must be aware of 'what acts were necessary to establish guilt.'" *Duke v. State*, 2009 WY 74, ¶ 23, 209 P.3d 563, 571 (Wyo.2009) (quoting *Sanchez v. State*, 592 P.2d 1130, 1135 (Wyo.1979)).

[¶ 12] After defense counsel indicated that Mr. Sena was prepared to enter a plea of no contest, the court began its colloquy with Mr. Sena, which included the following:

> THE COURT: The charge in this case is third offense domestic battery. The Information alleges that on August 13 of 2008 that you committed a third offense domestic battery on [your girlfriend]. The maximum penalty for that offense is five years confinement and a $2,000 fine. Do you understand the charge against you and the maximum penalty?
>
> THE DEFENDANT: Yes, Your Honor.

Mr. Sena claims that this did not adequately inform him of the nature of the charge against him because the "district court did not read aloud the full text of the statute charging Mr. Sena with third domestic offense triggering a sentence of up to five years."

[¶ 13]   Mr. Sena offers no authority for the proposition that the court must read the full text of the statute to a defendant.   Our precedent suggests otherwise.   In *Reyna*, we deemed it sufficient for the court to inform a defendant that he was charged with "conspiracy to commit forgery," without reading the statute or listing the elements of either conspiracy or forgery.   In doing so, we noted that the "change of plea hearing did not take place in a vacuum," *Id.*, ¶ 12, 33 P.3d at 1133, and therefore, we review "the totality of the circumstances" to evaluate whether a plea was properly accepted.   *Id.*, ¶ 9, 33 P.3d at 1132.   Among the circumstances we considered were that Mr. Reyna was "an experienced criminal, with three previous penitentiary sentences for felony convictions," and that he was "represented by an experienced public defender who reviewed the evidence and plea options with him."   *Id.*, ¶ 12, 33 P.3d at 1133.   Given those circumstances, we were satisfied that the court had adequately advised Mr. Reyna of the nature of the charge against him.

[¶ 14]   Similarly, Mr. Sena has a lengthy criminal history, including several previous convictions on charges of battery against household members.   He was also represented by an experienced defense attorney, who informed the court that he had "gone over the affidavit of probable cause with Mr. Sena.   And he does not contest it.   He advises me that he does not contest those allegations, he just doesn't have any memory as a result of his excessive drinking that night."   Mr. Sena was adequately informed of the nature of the charge against him, and the court was not required to read to him the text of the statute.

[¶ 15]   Mr. Sena also points out that the court did not ask him if he had been convicted of two previous instances of battery against household members, and further, did not inform Mr. Sena "that such prior offenses must be against a household member" in order to trigger the charge of "Battery— Third Offense Domestic."   On this basis, Mr. Sena claims that the court did not adequately inform him of the nature of the charge against him.   The record does not support this claim.

[¶ 16]   Three times during the colloquy, the court informed Mr. Sena that the charge against him was "third offense domestic battery."   Because his criminal history includes several previous convictions for domestic battery, we have no doubt that Mr. Sena understood the terms "third offense," "domestic," and "battery."   Indeed, he explicitly confirmed that he understood the charge.   Furthermore, Mr. Sena did not contest the allegations set forth in the affidavit of probable cause.   Those uncontested allegations included the fact that Mr. Sena "has two previous convictions for domestic violence;  one out of Colorado on 10–21–2004 and another on 10–05–2007 out of Laramie County."   In light of all of the circumstances, we conclude that the court met the Rule 11 requirement of ensuring that Mr. Sena understood the charge of a third offense of battery against a household member.

### Did the court err in not informing Mr. Sena whether he could or could not withdraw his no contest plea?

■   [¶ 17]   The provisions of Rule 11 pertinent to this issue read as follows:

(e)  *Plea agreement procedure.—*

(1) In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:

(A) Agree not to prosecute other crimes or move for dismissal of other charges;

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;  or

(C) Agree that a specific sentence is the appropriate disposition of this case. . . .

(2) Disclosure of Agreement;  Decision of Court.—If a plea agreement has been

reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court.... If the agreement is of the type specified in subdivision (e)(1)(A) or (e)(1)(C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

Mr. Sena maintains that these provisions of Rule 11 require the court to tell him whether he could or could not withdraw his plea if the court did not accept the recommendation or request.

[¶ 18] Mr. Sena does not indicate whether his plea agreement was of the type specified in Rule 11's subdivision (e)(1)(A), subdivision (e)(1)(B), or subdivision (e)(1)(C). His position therefore appears to be that, no matter what kind of agreement was reached, the court was required to advise him whether or not he would be able to withdraw the plea. This position is contrary to the language of Rule 11.

[¶ 19] Pursuant to subdivision (e)(2) of Rule 11, the court is required to advise the defendant that he has no right to withdraw his plea only if the plea agreement is "of the type specified in subdivision (e)(1)(B)." This advisement is therefore required only if the attorney for the State agrees to "[m]ake a recommendation, or ... not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." In Mr. Sena's case, defense counsel made it clear that the agreement was not of the type specified in subdivision (e)(1)(B). The agreement was a "limited one" because the attorney for the State had made

> no agreement as i[t] relates to sentencing; however, there is an agreement to release Mr. Sena on all the—on his own recognizance on all of the bond conditions that

were previously set ... but with the additional requirement that he participate and successfully complete the Transitions Residential Treatment Program here in Cheyenne.... So there is no agreement on sentencing, but there is an agreement to release him to the treatment program today.

Responding to questions from the court, the prosecutor agreed that this was an accurate description of the agreement, and Mr. Sena confirmed that it was consistent with his understanding of the agreement.

[¶ 20] Because Mr. Sena's plea agreement was not "of the type specified in subdivision (e)(1)(B)," the court was not required by Rule 11 to advise Mr. Sena whether or not his plea could be withdrawn. The court could have given such advice and, under other circumstances, it may be prudent to do so. In Mr. Sena's case, however, everyone knew that there was no agreement as to sentencing, and the court made it clear to Mr. Sena that he would be sentenced at the court's discretion. The district court did not err by failing to tell Mr. Sena whether his plea could be withdrawn.

### Did the court err by failing to advise Mr. Sena about the potential impact of the Addicted Offender Accountability Act on his sentence?

[¶ 21] The portion of Rule 11 relevant to this issue requires the Court to determine that the defendant understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction." W.R.Cr.P. 11(b)(1). To reiterate a point noted above, the broad purpose of Rule 11 is "to allow the judge to determine whether the defendant entered the plea voluntarily," and to be truly voluntary, a plea must be made "with an understanding of the consequences of the plea." *Major*, ¶ 11, 83 P.3d at 472.

[¶ 22] Mr. Sena asserts that he was not adequately advised of the maximum possible penalty because he was not informed of the potential impact on his sentence of Wyo. Stat. Ann. § 7-13-1303, part of Wyoming's Addicted Offender Accountability Act. Pursu-

ant to this statute, a "qualified offender" (defined as "a person convicted of a felony whom the court finds has a need for alcohol or other drug treatment," Wyo. Stat. Ann. § 7–13–1301(a)(iv)) may be placed on probation to allow him to participate in a treatment program. Wyo. Stat. Ann. § 7–13–1303(a). We have observed that "the unambiguous purpose of the Act, as set forth in Wyo. Stat. Ann. § 7–13–1304, is to determine whether an offender 'could participate in a treatment program without posing an unreasonable risk to the safety of the public.'" *Janpol v. State*, 2008 WY 21, ¶ 20, 178 P.3d 396, 403 (Wyo.2008) (emphasis omitted).

[¶ 23] Mr. Sena points out that the court found him to be a qualified offender, and therefore, he was eligible for probation rather than incarceration. "Because probation is a possible sentence," he asserts, "the trial court must so advise Mr. Sena." This assertion is unsupported by the language of Rule 11, and contrary to our precedent.

[¶ 24] Mr. Sena was charged with a violation of Wyo. Stat. Ann. § 6–2–501(b) and (f)(ii). The statute does not mandate a minimum penalty for this crime, so the court was not required to inform Mr. Sena of any mandatory minimum penalty. The statute provides for a maximum penalty of "not more than five (5) years, a fine of not more than two thousand dollars ($2,000.00), or both." During the colloquy, the court informed Mr. Sena that the "maximum penalty for that offense is five years confinement and a $2,000 fine." The court then asked Mr. Sena, "Do you understand the charge against you and the maximum penalty?" Mr. Sena responded, "Yes, Your Honor."

■ [¶ 25] Under Wyoming law, "the restraints of probation cannot exceed a period in excess of the maximum term of imprisonment authorized by the statute violated." *Hicklin v. State*, 535 P.2d 743, 753 (Wyo. 1975); *see also Lanier v. State*, 900 P.2d 1161, 1163 (Wyo.1995). Accordingly, Mr. Sena could not have been sentenced to a term of probation longer than five years. We have recognized that probation "is 'an authorized mode of *mild* and ambulatory punishment,'" and that a "person on probation is not serving a sentence but is in a status *something less* than imprisonment." *Hicklin*, 535 P.2d at 753 (emphasis added) (quoting *Korematsu v. United States*, 319 U.S. 432, 435, 63 S.Ct. 1124, 1126, 87 L.Ed. 1497, 1499 (1943)). Based on this precedent, it is apparent that five years of probation is a less severe penalty than five years of imprisonment. Mr. Sena was informed, and understood, that the maximum possible penalty for the crime charged against him was five years imprisonment. Because probation was not the "maximum possible penalty provided by law," the court was not required by Rule 11 to inform Mr. Sena of the possibility of probation.

### CONCLUSION

[¶ 26] Having considered each of Mr. Sena's claims, we conclude that the court complied with the procedural requirements of Rule 11 of the Wyoming Rules of Criminal Procedure. We affirm Mr. Sena's conviction and sentence.